1999 SD 91

### STATE of South Dakota, Plaintiff and Appellee,

v.

### Timothy Eldon HINGER, Defendant and Appellant.

#### No. 20783.

Supreme Court of South Dakota.

Considered on Briefs June 1, 1999.

Decided July 21, 1999.

Mark Barnett, Atty. Gen., Grant Gormley, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Donna L. Bucher of Tinan, Smith & Bucher, Mitchell, for defendant and appellant.

MILLER, Chief Justice.

[¶ 1.] Timothy Eldon Hinger (Hinger) was charged with first degree rape, SDCL 22–22–1(1) and sexual contact with a child under the age of sixteen. SDCL 22–22–7. After Hinger pled guilty to first degree rape, the state dismissed the sexual contact charge.

[¶ 2.] Under SDCL 22–22–1(1), first degree rape "is an act of sexual penetration accomplished with any person if the victim is less than ten years of age." It is a Class 1 felony, SDCL 22–22–1, with a mandatory minimum sentence of ten years for a first offense and twenty years for a subsequent offense. SDCL 22–22–1.2. The maximum penalty is life imprisonment and a fine of $25,000. SDCL 22–6–1(3).

[¶ 3.] Hinger was sentenced to life imprisonment and ordered to pay court costs as well as restitution for the victim's counseling and expenses involved to allow him to resume a normal life. Because he was

sentenced to life imprisonment, Hinger is not eligible for parole. SDCL 24–15–4.

[¶ 4.] We reverse and remand for proceedings consistent with this opinion.

## FACTS

[¶ 5.] Hinger is now twenty-eight years old. He comes from a family where drinking, arguing, and violence were commonplace. He was sexually abused by his grandfather and verbally and physically abused by his mother.

[¶ 6.] Hinger is hearing impaired and wears hearing aids in both ears. He has a speech impairment, curvature of the spine, and long-standing problems with hyperactivity, depression and anger. He has been a client (known for frequent "no shows") at Dakota Mental Health Center since 1990 and is on Prozac.

[¶ 7.] Hinger believes that he has a tenth grade education. He attended the South Dakota School for the Deaf, the Northern Hills Workshop, and the Black Hills Co-op program.

[¶ 8.] Since the age of seventeen, Hinger has been abusing alcohol. He completed one inpatient alcohol program and has participated in two other inpatient programs. He has also been referred to AA and community alcohol programs, which he has not successfully completed because of his failure to follow through. Because of his alcoholism, he has had a history of unstable work, financial, and living arrangements. Disability income through SSDI has allowed him to survive.

[¶ 9.] Hinger's involvement in the criminal justice area includes:

| | |
|---|---|
| 8/13/88 | Mitchell PD/Simple Assault—dismissed |
| 6/14/89 | Mitchell PD/Simple Assault—dismissed |
| 2/11/90 | Mitchell PD/Vandalism–Intentional Property Damage, 3rd degree-Simple Assault-Underage Consumption of Alcohol-dismissed |
| 6/25/90 | Davison County SO/Simple Assault-dismissed |
| 12/28/90 | Mitchell PD/Underage Consumption–Simple Assault–Unlawful Occupancy-all counts dismissed |
| 3/12/91 | Mitchell PD/Simple Assault-dismissed |
| 7/20/91 | Mitchell PD/Simple Assault-reduced to Disorderly conduct-$50 fine, costs, 5 days susp. on conditions |
| 12/6/91 | SD Highway Patrol/DUI, 1st offense-plea of guilty–30 days jail, conditions |
| 1/23/92 | Mitchell PD/Petty Theft, 1st degree-plea of guilty to petty theft-costs, 30 days susp. on conditions |
| 3/4/92 | Mitchell PD/Simple Assault-dismissed |
| 1/26/93 | Davison County SO/Disorderly Conduct-dismissed |
| 3/1/96 | Minnehaha County SO/Domestic Violence-obstructing–Resisting Arrest-plea of guilty to Simple Assault-$100 fine, 90 days jail, 75 susp., resisting dismissed |
| 4/3/96 | Minnehaha County SO/Obstructing-Resisting Arrest–Domestic Violence-plea of guilty to Resisting Arrest–180 days jail, 170 susp.-simple assault dismissed |
| 4/20/96 | Mitchell PD/DUI, 2nd offense-$300 fine, 90 days jail, 75 susp. |
| 4/22/96 | Huron PD/DUI, 2nd offense-$1000 fine, 500 susp., 180 days, 120 susp. |
| 5/10/96 | Mitchell PD/Domestic Violence–Simple Assault-dismissed |
| 6/1/96 | Minnehaha County SO/Grand Theft amended to Unauthorized use of a Motor Vehicle-60 days, 42 susp. |
| 4/12/97 | Madison, WI SO/Disorderly Conduct-Obstructing an Officer |
| 5/4/98 | Union County/DUI |

5/4/98 Davison County/Obstruction–Failure to Appear

5/8/98 Mitchell PD/Sexual Contact Under 16; Sexual Contact with Person Unable to Consent

The majority of simple assaults and domestic violence charges stem from incidents with family members when Hinger had been drinking. Many were dismissed because he or family members did something positive to correct the situation. The court services officer observed, "[m]ost of these quick fixes were just that."

[¶ 10.] The incidents leading to Hinger's guilty plea occurred in 1993, were reported in 1996, and were prosecuted in 1998.[1] Hinger admitted that during July 1993, he had sexual contact with his seven-year-old nephew by placing his finger in his nephew's anus once, and his penis in his anus twice. In each case, Hinger and his nephew were alone in Hinger's apartment. Hinger, who had been drinking each time, asked his nephew to remove his clothes. He then placed the nephew on his lap and penetrated him. According to nephew's mother (who is Hinger's sister), nephew has suffered pain and humiliation, fears Hinger, and does not want to be near him.

[¶ 11.] As part of the presentence investigation, Hinger submitted to a psychological evaluation. This report of this evaluation revealed in part,

- Hinger was limited as a historian by his intellectual deficits, along with a propensity to minimize and rationalize his illegal actions, project blame on others, and to exaggerate depressive symptoms in an attempt to evade legal consequences for his actions.

- "He went on to complain that he didn't understand why he was blamed, as it happened so many years ago. He vac-

illated between blaming his sister and nephew for reporting the event, and stating 'I made a mistake. I never shoulda done it. It's illegal for me to do that to a minor.' "

- His sexual fantasies usually involve adult males, although he has had fantasies about sex with children, a remark he distanced himself from.

- His full scale IQ is 63, placing him in the mild mentally retarded range. His academic abilities are at the third and fourth grade level. (Fifth grade reading abilities generally demonstrate literacy).

- "[S]ome of his responses suggested the possibility of Pedophilia. As such, that diagnosis was provided on a 'rule out' basis, simply indicating that it needs to be considered as a possibility and warranting further investigation. This is an individual who professes bisexuality, but who appears to have a preference for homosexual relationships. He appears to choose his victim due to availability, rather than to go out into the community to find, select, and 'groom' a victim. Mr. Hinger did appear to have some insight into the inappropriateness of his actions, and the need to control his behavior by not being with children. However, he appeared to present a moderate risk of reoffending, given his lack of remorse, lack of empathy, and lack of control of severe Alcohol Dependence."

- "He has had a long history of inner experiences and behavior which have resulted in social, vocational, legal, and personal impairment. He has disregarded typical social norms and laws, demonstrating a strong antisocial character. He has shown a persistent

---

1. There is no limitation on the time within which a prosecution for a Class 1 felony must be commenced. SDCL 23A–42–1. In addition, SDCL 22–22–1 provides, in part, that "[n]otwithstanding § 23A–42–2 [prosecutions other than Class A, B, or 1] a charge brought pursuant to this section may be commenced at any time prior to the time the victim becomes age twenty-five or within seven years of the commission of the crime, whichever is longer."

inability to modulate his emotions and behavior, resulting in long-standing problems with anger and interpersonal conflicts. His sense of self appears to be very unstable, with his often acting out in an impulsive, attention seeking manner. These deficits in his personality have been resistant to multiple, multifaceted therapeutic efforts. He has been involved in outpatient counseling, psychotropic medication management, day treatment, alcohol treatment, and psychiatric hospitalizations. The prognosis for change in this area is quite poor."

The report concluded:

*"Recommendations:* I would strongly recommend that Mr. Hinger be ordered to attend a sexual offender relapse prevention program for a prolonged period of time in a very controlled setting. I would further recommend that his sentencing include the requirement that he be involved in an alcohol treatment program, again in a very controlled setting. If released at some point in the future, he would be a prime candidate for a prolonged halfway house placement, mandating sobriety and testing of bodily fluids for compliance, and very close monitoring. Psychiatric follow up is warranted, at a minimum to monitor his antidepressant medication, and also his risk of suicide. Suicide precautions should be intensified as sentencing takes place, particularly if a long prison term is given."

[¶ 12.] Due to the nature of the offense, the state and the victim recommended a significant penitentiary sentence, if not a life sentence. Based upon the disturbing nature of the psychological report which, they believed, painted a dim prospect of rehabilitation, they also argued that a life sentence was appropriate. Hinger's attorney argued that his background offered an explanation, not an excuse, for his behavior. He argued that Hinger did take responsibility for his actions and was a candidate for rehabilitation if the penitentiary implemented the recommendations found in the psychological evaluation.

[¶ 13.] In sentencing Hinger the trial court said, in part:

THE COURT: I think that probably the first time I became acquainted with you was when you were a juvenile and I think you kicked Marie, your Court Services Officer, and you were then charged with assault and disposed of in juvenile court and remanded to the Black Hills Coop if I remember correctly.

\* \* \* \* \* \*

THE COURT: Since that time, you have been in and out of the court system on a fairly regular basis, and for all practical intents and purposes, you have been given this break and that break for a considerable period of time in your life.

I don't see that this court has any alternative when it comes to sentencing.

\* \* \* \* \* \*

THE COURT: Be the judgment and sentence of the court that you be confined in the State Penitentiary for the balance of your natural lifetime. You are remanded to the custody of the sheriff for purposes of execution of sentence. The court will require that restitution be made for all counseling and expenses in—directly related to or indirectly related to in assisting the victim to resume a normal life from that standpoint. You are remanded to the custody of the sheriff for purposes of execution of sentence. I do not see from the totality of the report that we have an individual who will be capable of rehabilitation so as to not offend or be a serious problem to society and I believe that type sentence is not only for society's best interests, but your own. You may be seated.

### ISSUE

[¶ 14.] **Is Hinger's life sentence for first degree rape cruel and unusual punishment in violation of the Eighth**

**Amendment to the United States Constitution?**

█ [¶ 15.] Hinger argues his life sentence for first degree rape is cruel and unusual punishment and he contends that the sentence violates the Eighth Amendment to the United States Constitution.

[¶ 16.] In *State v. Jensen,* 1998 SD 52, 579 N.W.2d 613, 623–24 (1998), we reiterated the principles of sentence review:

Recently this Court altered its approach to examination of sentences that purportedly violate the Eighth Amendment prohibition against cruel and unusual punishment. *State v. Bonner,* 1998 SD 30 ¶ 13, 577 N.W.2d 575. No longer will the "shock the conscience" test be applicable to federal constitutional analysis under the Eighth Amendment. *Id.* Instead, proportionality review will be guided by "common principles" identified by Justice Kennedy in the Supreme court's latest pronouncement on this issue. *Id.* ¶¶ 15–16 (referring to *Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991)) (modifying *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983)). These principles are as follows:

(1) reviewing courts must grant substantial deference to the legislature's broad authority to determine the types and limits of punishment; (2) the Eighth Amendment does not mandate adoption of any one penological theory; (3) marked divergences "are the inevitable, often beneficial result of the federal structure"; and (4) proportionality review by federal courts should be informed by objective factors.

*State v. Gehrke,* 491 N.W.2d 421, 423 n. 2 (S.D.1992)(citing *Harmelin,* 501 U.S. at 998–1001, 111 S.Ct. at 2703–04, 115 L.Ed.2d at 867–68). In summarizing this new approach, the *Bonner* opinion set forth the following steps:

[T]o assess a challenge to proportionality we first determine whether the sentence appears grossly disproportionate. To accomplish this, we consider the conduct involved, and any relevant past conduct, with utmost deference to the legislature and the sentencing court. If these circumstances fail to suggest gross disproportionality, our review ends. If, on the other hand, the sentence appears grossly disproportionate, we may, in addition to examining the other *Solem* factors, conduct an intra-, and inter-jurisdictional analysis to aid our comparison or remand to the circuit court to conduct such comparison before resentencing. We may also consider other relevant factors, such as the effect upon society of this type of offense.

*Bonner,* 1998 SD 30, ¶ 17, 577 N.W.2d at 580.

[¶ 17.] "In 1991, the Legislature amended SDCL 22–22–1 to make the rape of a child less than ten years of age a Class 1 felony. Prior to the amendment, that crime was classified as a Class 2 felony. *See* SD Law ch. 24, § 8." *State v. Peterson,* 1996 SD 140 ¶ 22, 557 N.W.2d 389, 394. The effect of this change was to increase the maximum penitentiary penalty from twenty-five years to life imprisonment without parole. SDCL 22–6–1(4); SDCL 22–6–1(3); SDCL 24–15–4. In addition, in 1992 the legislature enacted SDCL 22–22–1.2 which provides, in part:

If any adult is convicted of any of the following violations, the court shall impose the following minimum sentences:

(1) For a violation of subdivision 22–22–1

(1)[first degree rape of a child under the age of ten], ten years for a first offense and twenty years for a subsequent offense[.]

1992 SD Sess.L. ch. 164 § 1. If the sentencing court finds mitigating circum-

stances, it may depart from the mandatory minimum sentence. SDCL 22–22–1.4.[2]

[¶ 18.] The substantial increase in the maximum penalty for the first degree rape of a child under ten, as well as the imposition of mandatory minimum sentences for a first and subsequent offense reflects the public intent. *State v. Peterson*, 557 N.W.2d at 394. These changes reflect an accelerating concern with protecting children, *State v. Bonner*, 1998 SD 30 at ¶ 28, 577 N.W.2d at 583, and an increasing intolerance for the sexual exploitation of children. *State v. Raymond*, 1997 SD 59 ¶ 33, 563 N.W.2d 823, 829.

 [¶ 19.] In addition, the legislature's establishment of a punishment range of ten years to life imprisonment for the first degree rape of a child under ten, clearly shows its intent that:

> the more serious commissions of this crime to deserve sentences at the harsher end of the spectrum. "[I]t is a precept of justice that punishment for the crime should be graduated and proportioned to the offense." *Weems v. United States*, 217 U.S. at 367, 30 S.Ct. at 549, 54 L.Ed. at 798. Thus a trial court's sentence ought to be proportionate to the particulars of the offense and the offender. Imposing the maximum possible term where the circumstances of the crime only justify a sentence at a lower range violates legislative intent "to reserve the most severe sanctions for the most serious combinations of the offense and the background of the offender." *People v. Milbourn*, 435 Mich. 630, 461 N.W.2d 1, 17 (1990).

*State v. Bonner*, 1998 SD 30 at ¶ 25, 577 N.W.2d at 582.

[¶ 20.] Hinger received the most severe sanction—life imprisonment—for a first offense, first degree rape of a child under ten. The question becomes whether this "most severe" sanction was reserved for "the most serious combinations of the offense and the background of the offender." *Id.*

 [¶ 21.] An appropriate sentence requires that:

> The sentencing court should "acquire a thorough acquaintance with the character and history of the man before it." This study should examine a defendant's "general moral character, mentality, habits social environment, tendencies, age, aversion or inclination to commit crime, life, family, occupation, and previous criminal record."

> *Chase in Winter*, 534 N.W.2d at 354–55 (quoting *Pack*, 516 N.W.2d at 667–68 (citations omitted)). The sentencing court should also consider rehabilitation prospects. *Bult II*, 507 N.W.2d at 328.

> *State v. Lemley*, 1996 SD 91 ¶ 12, 552 N.W.2d 409, 412.

*State v. Bonner*, 1998 SD 30 at ¶ 19, 577 N.W.2d at 580. When a defendant is convicted of a violation listed in SDCL 22–22–1.2, a sentencing court receives "extra information" regarding the sex offender. *Bult v. Leapley*, 507 N.W.2d 325, 329 (S.D. 1993)(Henderson, J. specially concurring). Under SDCL 22–22–1.3:

> Any person convicted of a violation listed in § 22–22–1.2 shall have included in his presentence investigation report an assessment which shall include the following information: the offender's sexual history; intellectual, adaptive and academic functioning; social and emotional functioning; previous legal history; previous treatment history; victim selection; risk to the community; and treatment options recommended.

---

**2.** SDCL 22–22–1.4 provides:

> The sentencing court may impose a sentence other than that which is required by § 22–22–1.2 if the court finds that mitigating circumstances exist which require a departure from the mandatory sentence imposed by § 22–22–1.2. The court's finding of mitigating circumstances allowed by this section and the factual basis relied upon by the court shall be in writing.

[¶ 22.] Here, Hinger admittedly raped his seven-year-old nephew. As such, Hinger, a trusted family member, exploited a young child and committed a vile crime. *See State v. Raymond,* 1997 SD 59 at ¶ 33, 563 N.W.2d at 829. His criminal sexual contact, however, was confined to one victim on two occasions in July 1993. There was no further pattern of sexual abuse, and no allegations of any other victims before or after that. *Compare, State v. Peterson,* 1996 SD 140 at ¶¶ 28–30, 557 N.W.2d at 395–396; *State v. Raymond,* 1997 SD 59 at ¶ 36, 563 N.W.2d at 830. In addition, this is Hinger's first felony conviction. While he is no stranger to the criminal justice system, the majority of charges lodged against him have been dismissed. Any escalation in his criminal activity has been due to his alcoholism and not any escalation in criminal sexual behavior.

[¶ 23.] While the circumstances of this case seemingly suggest that a life sentence was grossly disproportionate, there is another factor that must be examined. A sentencing court must always consider a defendant's rehabilitation prospects, *State v. Bonner,* 1998 SD 30 at ¶ 19, 577 N.W.2d at 581, and this is particularly important in cases where a life sentence is under consideration.

> We have recognized that while a life sentence without parole extracts [sic] retribution, deters the convict from committing crime, removes him from the street, and puts would-be felons on notice of the high penalty of recidivism, it completely eschews the goal of rehabilitation.

*Bult v. Leapley,* 507 N.W.2d 325, 327 (S.D.1993); *State v. Weiker,* 342 N.W.2d 7, 10 (S.D.1983), *cert denied,* 465 U.S. 1069, 104 S.Ct. 1422, 79 L.Ed.2d 747 (1984). *State v. Raymond,* 1997 SD 59 at ¶ 35, 563 N.W.2d at 830. Consequently,

> This court has stated rehabilitation is a factor which must be ruled out before a life sentence may be imposed. A life sentence should only be imposed when a trial court:

> > [C]an determine from the facts of the principal offense and the previous convictions that rehabilitation is so unlikely as to be removed from consideration in sentencing; that the interests of society demand that the convict be kept off the streets for the rest of his life … and that the life sentence not constitute excessive retribution.

*Pulfrey,* 1996 SD 54, ¶ 18, 548 N.W.2d at 38 (citations omitted).

*State v. Peterson,* 1996 SD 140 at ¶ 29, 557 N.W.2d at 395. "We therefore have determined a trial court should only impose a life sentence when the facts of the principal offense and the previous convictions make rehabilitation so unlikely that it is removed from consideration in sentencing." *State v. Raymond,* 1997 SD 59 at ¶ 35, 563 N.W.2d at 830.

[¶ 24.] In this case the trial court made the general observation that "I do not see from the totality of the report that we have an individual who will be capable of rehabilitation so as to not offend or be a serious problem to society[.]" While our review of the record suggests otherwise, the issue of whether Hinger is capable of rehabilitation is a fact question to be decided by the trial court. *State v. Pulfrey,* 1996 SD 54 ¶ 20, 548 N.W.2d 34, 39. Our review of the issue is hindered by the absence of specific findings on the issue of Hinger's amenability to rehabilitation and whether Hinger's behavior was compulsive or rose to the level of pedophilia. *See People in Interest of J.J.,* 454 N.W.2d 317, 325 (S.D.1990); *State v. Chamley,* 1997 SD 107 ¶ 62, 568 N.W.2d 607, 623 (Gilbertson, J. dissenting in part and concurring in part)(studies suggest some child molesters are not curable and have high recidivision rates).

[¶ 25.] Therefore, we reverse and remand. We direct the trial court to make specific findings on whether Hinger is a pedophile and whether he is capable of

rehabilitation and to reconsider Hinger's sentence in light of those findings.

[¶ 26.] SABERS, AMUNDSON, and GILBERTSON, Justices, concur.

[¶ 27.] KONENKAMP, Justice, concurs in result.

KONENKAMP, Justice (concurring in result).

[¶ 28.] I agree this case should be remanded for a proportionality analysis and resentencing because based on the record before us the life sentence appears grossly disproportionate. On resentencing the court should take into account the factors set forth in *State v. Bonner*, 1998 SD 30, ¶ 19, 577 N.W.2d 575, 581, including rehabilitation. I do not agree, however, that we should be remanding to have the sentencing court enter findings of fact concerning rehabilitation and pedophilia. As circuit courts are not required in the first instance to make fact-findings on the reasons for their sentencing decisions, they should not be required to do so on remand. It is only when a court departs from a mandatory sentence that it is required to make factual findings on the mitigating circumstances. SDCL 22–22–1.4.