SABERS, Justice
(dissenting).
[¶ 85.] I dissent. This Court remanded Blair’s case with a direct command to the circuit court: resentence Blair taking into account the factors set forth in State v. Bonner, 1998 SD 30, 577 N.W.2d 575 and State v. Hinger, 1999 SD 91, 600 N.W.2d 542. The circuit court ignored this command and engaged in a “pick and choose” analysis whereby it addressed and accentuated only those facts that supported Blair’s excessive sentence. Today, this Court upholds the “pick and choose” analysis and does little to address whether Blair’s excessive sentence is consistent with the Eighth Amendment. If this excessive sentence stands, it sends a message to the State to keep building more and bigger prisons.
[¶ 86.] In Bonner, we abandoned the “shock the conscience test” in favor of a two pronged analysis. 1998 SD 30, 577 N.W.2d 575. As an initial matter, we “determine whether the sentence appears grossly disproportionate.” Id. ¶ 17. Our review examines “the conduct involved, any relevant past conduct, with utmost deference to the Legislature and the sentencing court.” Id. Central to this analysis is the sentencing court’s duty to “reserve the most severe sanctions for the most serious combinations of the offense and the background of the offender.” Id. ¶ 25, 577 N.W.2d at 582 (emphasis added).
[¶ 87.] We reversed and remanded the circuit court’s original sentence of fifty years. On remand, the circuit court was ordered to engage in a proportionality analysis and resentence Blair taking into account the factors set forth in Bonner, and Hinger, 1999 SD 91, 600 N.W.2d 542. As mentioned, Bonner is our seminal case concerning issues of proportionality. However, on remand, the circuit court described Bonner and our decision to reverse the fifty-year sentence as follows:
The initial determination that the sentence may be grossly disproportionate is apparently made by the Supreme Court, without the benefit of seeing and hearing the defendant, the victims, or other witnesses in the case. The initial determination is, in the opinion of this court, merely the “shock the conscience” test under another name. A justice looks at the nature of the crime without knowing much about it, and looks at the prior *78 record of the defendant, and makes a subjective judgment that this sentence “may be” grossly disproportionate, and remands the case for further findings by the trial court.
The circuit court clearly disagreed with our decision to remand this matter, as well as the law which the circuit court was obligated to apply.[25] Unfortunately, the circuit court’s decision is plagued by its initial sentiments, resulting in a sentence for Blair that is grossly disproportionate to his crimes. Fifty years with ten years suspended upon certain conditions is, for all practical purposes, the same sentence the circuit court set in the first proceeding.
[¶ 88.] Gross Disproportionality
[¶ 89.] Nature of the offense
[¶ 90.] Before it was repealed, SDCL 22-22-28 made it a class four felony to “photograph or film a minor under the age of sixteen years engaging in a prohibited sexual act....” SDCL 22-22-22 defined what acts constituted a “prohibited sexual act.” Most of the conduct criminalized included causing or directing minors under the age of sixteen to engage in “intercourse, anal intercourse, bestiality, sadism, fellatio, etc.” However, the statute also encompassed nudity, standing alone, as a prohibited sexual act if the nudity was depicted “for the purpose of sexual stimulation or gratification of any person who might view such depiction.” SDCL 22-22-22. Ultimately, SDCL 22-22-23 through SDCL 22-22-24 were targeted at punishing individuals who were engaged in the manufacture, sale, possession, or distribution of child pornography.
[¶ 91.] We do not condone Blair’s conduct. However, the Legislature did not intend the surreptitious photographing or video recording of persons using the bathroom to be the most serious violations of SDCL 22-22-23. None of these girls were aware that they were being recorded. Blair did not cause any of these girls to engage in “intercourse, bestiality, sadism, fellatio, etc.” Instead, he recorded these girls engaging in common every day functions such as showering and using the toilet.[26] The court service officer in this case was experienced in dealing with sex offenders. In his summary, he noted that Blair’s crime “did not rank very high in the scheme of sex crimes.”
[¶ 92.] The circuit court recognized that there was no sexual contact in this case. However, it compared Blair’s conduct to that of a man who had forcibly raped a woman causing her psychological injuries. According to the circuit court, Blair’s crimes could be just as psychologically damaging as cases in which there was forcible sexual contact. The circuit court also compared this case to State v. Spack.[27] In Spack, the defendant was charged with twenty counts of third degree rape, nine counts of photographing a child in an obscene act, and nine counts of possession of child pornography. Spack raped a thirteen-year-old girl numerous times and photographed her while she was performing fellatio on him. Additionally, law enforcement recovered a note from the victim to Spack that indicated if he were to allow her to go out on a given night he could do anything to her except “put it in her butt.”
*79 [¶ 93.] Blair’s conduct does not rise to the level of Spack’s, or any defendant who commits multiple rapes or sexual assaults. The State alleges no actual or attempted sexual contact on the part of Blair.[28] Surreptitious recording is not equal to photographing a minor while being raped. In fact, nudity standing alone, no longer constitutes “a prohibited sexual act” under the South Dakota Codified Laws.[29] Because Blair’s conduct falls far short of the most serious commission of this crime, the circuit court erred in this regard.
[¶ 94.] The plurality opinion does little to address the circuit court’s rationale behind its sentence. Instead, in a manner that is barely distinguishable from the State’s brief, it makes a series of bold, unsupported pronouncements. For example, the plurality opinion labels Blair as “an attempted child molester.” It does so despite the fact that the State did not allege or charge attempted sexual assaults. The plurality opinion spends a great deal of time discussing the horrors of manufacturing and distributing child pornography. While we agree with those general propositions, there is no evidence in the record that Blair was involved in any way with disseminating any of these videos. Therefore, we disagree with the circuit court and the plurality that this severe sentence was reserved for the most serious commission of the crime.
[¶ 95.] Background of the Offender
[¶ 96.] We noted in Bonner that the lack of a prior felony conviction or other serious offense aids our decision and “certainly bears on the question of gross dis-proportionality.” 1998 SD 30, ¶ 23, 577 N.W.2d at 581-82. As mentioned, our order to the circuit court required that it consider this case in light of the principles set forth in Bonner. On remand, the circuit court mentioned that Blair had no prior felony convictions. Remarkably, the circuit court considered Blair’s lack of a prior felony conviction “irrelevant.”
[¶ 97.] Apparently, the circuit court decided that Blair’s prior misdemeanor convictions supported the sentence. His misdemeanor record included a conviction for disorderly conduct, three convictions for insufficient funds checks less than one hundred dollars, a conviction for driving while intoxicated, and a violation of a boating regulation. The prosecutor stated at the sentencing hearing that she did not believe Blair had a significant criminal history. The circuit court disagreed.
[¶ 98.] The circuit court cited State v. Stahl, 2000 SD 154, 619 N.W.2d 870, in holding that numerous misdemeanor convictions may support a sentence at the harsher end of the spectrum. Stahl had “nineteen prior misdemeanor convictions and three violations of the terms of suspended sentences.” Id. ¶ 6, 619 N.W.2d at 872. Stahl’s record spanned twenty-four years and included offenses such as simple assault, furnishing alcohol to a minor, three DUI’s, reckless driving, and open container. Id. Stahl also admitted past *80 use of marijuana, methamphetamine and LSD. Id. Despite all of this, the circuit court found “no significant difference between Stahl’s prior record and the defendant’s [Blair’s].”
[¶ 99.] Unlike the circuit court, I find significant differences between Stahl and Blair’s criminal records. The most obvious is that Stahl has over three times as many misdemeanor convictions. Additionally, Stahl was convicted of a violent crime and admitted to major drug use.
[¶ 100.] The plurality opinion notes that the circuit court characterized the lack of a prior felony conviction as “irrelevant.” However, the plurality opinion goes on to conclude that “a fair reading of the record indicates the circuit court heavily discounted this factor in comparison to the other relevant factors it considered.” See plurality opinion ¶ 34. Apparently, the plurality opinion believes a literal reading of the record would be “unfair.” More importantly, Bonner required the circuit court to consider the lack of a prior felony conviction. By using the term “irrelevant,” the circuit court did not believe the lack of a prior felony conviction was worthy of consideration. The circuit court erred in rejecting Bonner and comparing Blair’s criminal background to that of Stahl. This most severe sentence was not reserved for the most serious background of the offender.
[¶ 101.] Remorse & Rehabilitation Prospects
[¶ 102.] A pre-sentence investigation was done and the results were given to the sentencing judge.[30] Blair had a consistent employment history and had worked as a counselor, youth care director, social worker, and in computer networking. The pre-sentence investigator found no allegations of improper conduct while Blair was working in those capacities.
[¶ 103.] In his evaluation, the pre-sen-tence investigator wrote:
Mr. Blair is before the Court on his first felony. He was very emotional during our interview and cried openly on several occasions. I have no doubt that he is remorseful for his actions and the hurt he caused his victims, their families, his family and himself.
The pre-sentence investigator, a seasoned court service worker, noted that “in the scheme of sex crimes, this does not rank very high ...” He recommended that Blair receive a considerable amount of incarceration time with most of it suspended upon specific conditions.
[¶ 104.] The record includes Dr. Mary Curran’s counseling notes. On at least six different occasions, Dr. Curran noted that Blair had accepted responsibility for his acts and “knows he has no one to blame but himself.” The court service officer also believed Blair was remorseful. On remand, however, the circuit court concluded Blair had lied to both Curran and the court’s service officer.
[¶ 105.] The plurality upholds this “credibility determination,” even though the circuit court was never privy to any of the conversations. In fact, the court never heard testimony on these issues or even referred to Curran’s notes in its decision. Nor did the prosecutor object or offer any *81 argument in regards to the counseling notes. Under these circumstances, I would not afford the same level of deference to these findings as the plurality. Additionally, it is important to recognize that Blair pleaded guilty to every charge brought forward by the State. How can the plurality and the circuit court conclude that he has not taken responsibility for his crimes?
[¶ 106.] Finally, the circuit court wanted Blair’s sentence to ensure that his “daughter was of sufficient age when [he] got out that [he] would no longer be any kind of threat to her.” One of the goals of sentencing is to remove incorrigible offenders from society. State v. Bult, 529 N.W.2d 197, 200 (S.D.1995) (Bult III). However, as mentioned earlier, Blair’s conduct did not include sexual contact or violence. Nor has there been a showing that Blair is incapable of rehabilitation. At the time this incident occurred, Blair’s daughter was thirteen years old. Blair was forty-two years old. If Blair was to serve even one-half of his forty-year sentence, his daughter would be thirty-three and he would be sixty-two. The circuit court’s sentence greatly exceeds its interest in ensuring Blair’s daughter would be of sufficient age upon Blair’s release.
[¶ 107.] In terms of rehabilitation, the plurality highlights only those facts that are adverse to Blair. Blair was convicted of photographing a child in an obscene act; a sex crime. Thus, the most important test results in terms of rehabilitation would be the Sex Item Truthfulness Scale. As to those findings, Dr. Curran concluded:
Cameron scored in the Low Risk Range (0 to 39 percentile) on Sex Item Truthfulness Scale (Risk Percentile 20). He was truthful when responding to test items having an obvious sexual connotation and relationship. With regard to sexual areas of inquiry, the sex related scale scores are likely accurate and valid.
Rather than focus on whether Blair was truthful in relation to matters collateral to the convictions, the proper focus should have been his rehabilitation prospects in terms of the crimes for which he was convicted. The circuit court essentially rejected the positions of the experienced court service officer, Dr. Curran, the prosecutor, the South Dakota cases submitted for proportionality review, this Court’s decisions in Bonner and Hinger, and this Court’s order of reversal and directions on remand. We should reverse and remand this matter again.

Conclusion

[¶ 108.] Our order made clear that the circuit court was to reconsider this sentence in accordance with State v. Bonner. The circuit court did not do so. Instead, it rejected Bonner and rejected the opinions of disinterested parties involved with this case. The result is a sentence that is greater than the sentences for those who have committed rapes and molested children.[31] The circuit court did not reserve *82 “the most severe sanctions for the most serious combinations of the offense and the background of the offender.” Bonner, 1998 SD 30, ¶ 25, 577 N.W.2d at 582 (emphasis added).[32]
[¶ 109.] If we are to continue to recognize a proportionality principle in Eighth Amendment cases, circuit courts should not be permitted to pick and choose facts that support their original sentence and ignore those facts that do not support the sentence.[33] I would reverse the sentence and remand with instructions to the Presiding Judge of the Second Judicial Circuit to assign Blair’s case to a different judge for proper sentencing. See State v. Bult, 544 N.W.2d 214, 217 (S.D.1996) (.Bult IV). Considering all factors objectively, Blair’s sentence should not exceed twenty five years. After all, that is a quarter of a century for surreptitiously recording teenage girls while they used the bathroom.
[¶ 110.] MEIERHENRY, Justice, joins this dissent.

.The circuit court wrote a lengthy decision and it will not be reproduced in this dissent. However, the circuit court on many occasions remarked that this Court’s procedures concerning proportionality were "awkward” and "subjective.”

. One girl was filmed masturbating with a hairbrush. However, she did not do so at the direction of Blair.

. Pennington County file number 01-832.

. The plurality opinion recites an allegation that Blair exposed himself to two of the girls. However, that claim remained disputed throughout these proceedings.

. The plurality claims Blair’s conduct would still constitute a crime under the current statutory scheme. See plurality opinion at n. 10. However, the plurality's claim is based on the premise that Blair videotaped these girls for the purpose of watching them defecate and urinate. See SDCL 22-24A-2 (defining a prohibited sexual act as "defecation or urination for the purpose of creating sexual excitement in the viewer”) There is no evidence that Blair videotaped these girls to watch them use the bathroom. Nor did the State, victims, counselors, judge, etc. mention such a claim. Instead, Blair videotaped these girls for the purposes of seeing them nude.

. The court service officer in this case was highly experienced. Although his report is not binding on either the circuit court or this Court, it deserves some consideration. We have used the results of a pre-sentence report to support a defendant's sentence. See State v. McKinney, 2005 SD 73, ¶ 12, 699 N.W.2d 471, 476; Ganrude v. Weber, 2000 SD 96, ¶ 11, 614 N.W.2d 807, 810. It would offend notions of justice if we were to dismiss, without grounds, a report when the results are favorable to the defendant.

. In In re L.S., 2006 SD 76, ¶ 4, 721 N.W.2d 83, this same circuit court judge sentenced a defendant for felony child abuse and suspended all but six months of the sentence. The child abuse charge included three allegations of actual sexual contact in which the defendant asked a young girl to touch his penis and "moved up and down" while she was sitting on his lap.
Seven months ago, we reversed a circuit court's order suppressing evidence in State v. Helland, 2005 SD 121, 707 N.W.2d 262. Helland possessed dozens of pornographic images entitled "hot boys” and "teen boys,” which depicted little boys with their legs spread. Helland was charged with twenty counts of possession of child pornography *82 and faced a possible one hundred years in prison.
On remand, Helland pleaded guilty to four counts of possessing child pornography. This same circuit court judge sentenced Helland. At the sentencing hearing, Hel-land admitted that he continues to possess child pornography despite the fact that the proceedings against him had been ongoing for two years. Ultimately, the same circuit court judge suspended all but six months of Helland's sentence.

. Proportionality Review — On remand, Blair submitted several cases of other defendants who had been convicted of photographing a child in an obscene act. The prosecutor offered no cases and did not submit a brief distinguishing any of the cases submitted by Blair. Only one of the defendants in those cases received sentences as severe as Blair. That defendant photographed a young girl during the course of multiple rapes over a three-year period. He also pleaded guilty to being a habitual offender. Because Blair’s sentence appears grossly disproportionate, I would remand so another judge could conduct a proper proportionality analysis.

. The author of the concurrence in result is the author of the Bonner decision. That is why it is troubling that the concurrence in result upholds Blair's sentence despite noting that "it is important that sentencing in these cases follow a logical methodology, so that the punishment fits the offense and the offender, and like offenses and offenders are punished similarly ... unwarranted leniency and excessive punishment both generate disrespect for the law." Concurrence In Result at ¶ 82. The concurrence in result goes on to conclude that Blair's offense does not "fall into the most serious category....” Id. ¶ 84. Despite all of this, it upholds Blair’s sentence on the grounds that we should not examine the sentence in the aggregate, but examine each conviction individually.
Whether we measure one grain of sand or one tree at a time, a desert remains a desert and forest remains a forest. Similarly, in this case, five eight-year sentences to be served consecutively amount to a forty-year sentence, i.e., a sentence that does not fit the offense or the offender, and a sentence that was imposed in an illogical manner, inconsistent with Bonner and its progeny. This case undermines the fundamental principle behind the Bonner decision: the words "Equal Justice Under Law" call for more than just a lofty inscription. Bonner, 1998 SD 30, ¶ 12, 577 N.W.2d 575, 578. Writing a concurrence in result may technically preserve Bonner as precedent, but for all practical purposes, Bonner is dead in this case. Finally, if "review ends” in a finding that Blair’s sentence does not even appear grossly disproportionate, why did it take a thirty-three page decision and a nine page concurrence in result to rationalize around it?