1996 SD 17
**STATE of South Dakota, Plaintiff and Appellee,**

v.

**William HART, Defendant and Appellant.**

**No. 19167.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 10, 1996.

Decided Feb. 21, 1996.

## Facts

[¶ 2] After an evening on the town, drinking and playing pool at various establishments, Hart ended up at the Oasis Bar where he noticed a woman (the eventual victim) vomiting outside. He recognized her because they were neighbors at the Plaza Sands Motel in Rapid City. At approximately 1:30 a.m. on October 1, 1994, Hart and the victim decided to walk back to the motel together.

[¶ 3] As they walked through an unoccupied, unlit parking lot, Hart pushed her with both hands. She pushed him back, telling him to "quit." She fell on her back, hitting her head on a curb. Hart straddled her, slapped her and choked her with one hand while attempting to unbutton her pants with his other hand. She scratched his face, then momentarily lost consciousness. When she revived, Hart had her pants down and his fingers in her vagina. She screamed and scratched his arm. From nearby, she heard a male voice call out, "yell again." Hart got up, yanked off her boots and ran away. The victim ran to a nearby street where a passing ambulance stopped to give her assistance. To Todd Nicolai, the ambulance driver, she appeared hysterical. He noticed her "messed up" hair and clothes: one foot had a stocking on it; her hair contained grass; her jeans were buttoned at the top, but the fly was open. The victim told him she was raped.

[¶ 4] In Hart's view, the victim consented until, as he told the jury, she broke it off and scratched his face. Hart said he and the victim stopped and kissed twice during their walk. On the second kiss, Hart put his hand underneath the victim's sweater, undid her pants button, then slid his hand down her pants, without penetrating her vagina. When the victim pulled away, Hart testified, she began to fall backwards; he tried to catch her, but both fell to the ground. Then she began to yell for help and because Hart heard somebody coming toward them, he ran away.

[¶ 5] When Rapid City Police Officer Cliff Peterson arrived, he first took the victim to her apartment. As he questioned her about the incident, she appeared very upset and was crying. He saw red marks on her

Mark Barnett, Attorney General, Grant Gormley, Assistant Attorney General, Pierre, for plaintiff and appellee.

Edward G. Albright, Pennington County Public Defender's Office, Rapid City, for defendant and appellant.

KONENKAMP, Justice.

[¶ 1] William Hart appeals his conviction of attempted second degree rape. We affirm.

throat, a bump on her head, and scrapes on her left forearm and knuckles. While at the motel, the victim spotted Hart and tried to hit him, but the officer intervened. As part of the rape investigation the victim was examined at the Rapid City Regional Hospital by Dr. Michael Matthews. She described to the doctor how Hart choked her and put his finger in her vagina. In his opinion the marks on her neck were consistent with having been choked within the past twelve hours. Dr. Matthews observed no injuries to her genital area, no marks on her buttocks, and only old abrasions on her knees; there were no physical signs of sexual penetration.

[¶ 6] Hart was charged with one count of second degree rape, in violation of SDCL 22-22-1(2),[1] and in the alternative, one count of attempted second degree rape, in violation of SDCL 22-4-1 and 22-22-1(2). He pled not guilty to both charges. At trial the jury found Hart guilty of attempted rape. The court sentenced him to three years in the South Dakota State Penitentiary. He appeals, raising the following issues:

I.  Whether the evidence was sufficient to sustain a conviction for attempted second degree rape.

II. Whether the trial court erred in not instructing the jury that specific intent is a required element of attempted second degree rape.

III. Whether the trial court abused its discretion by allowing testimony of Hart's alleged gang affiliation.

### Analysis

[¶ 7] **I. Sufficiency of the Evidence**

[¶ 8] In reviewing sufficiency of the evidence we have stated:

It is well settled that in determining the sufficiency of evidence on appeal, the question presented is whether or not there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt. In making such a determination, this court will

accept that evidence, and the most favorable inferences that can be fairly drawn therefrom, which will support the verdict.

*State v. Huettl*, 379 N.W.2d 298, 301 (S.D. 1985). *See also, State v. Sprik*, 520 N.W.2d 595 (S.D.1994); *State v. Davi*, 504 N.W.2d 844 (S.D.1993); *State v. Sitting Crow*, 428 N.W.2d 268 (S.D.1988); *State v. Grey Owl*, 316 N.W.2d 801 (S.D.1982).

■ [¶ 9] Hart argues that because the jury obviously disbelieved the victim's testimony that he sexually penetrated her, the evidence was insufficient to find him guilty of attempted rape: she did not testify he attempted to rape her, she testified he did rape her. The jury was apparently convinced by some, but not all, of the victim's testimony. To Hart a jury must take an all or nothing approach. Yet a jury's function is to resolve conflicts in the evidence, weigh witness credibility and sort out the truth. *Jenner v. Leapley*, 521 N.W.2d 422, 432 (S.D.1994). "We afford the strongest presumption in favor of a jury's determination of credibility." *State v. Heftel*, 513 N.W.2d 397, 399 (S.D. 1994) (citations omitted). The parts of her testimony the jury apparently accepted were validated by witness observations. She testified, for example, that Hart choked her and she scratched his face and arm. The investigating officer noticed red marks on her neck and scratches on Hart's face and arm. The doctor confirmed the marks on her neck as consistent with choking. While corroborating testimony is never necessary for an attempted rape conviction, it reinforces the evidence supporting the jury's verdict. *See* SDCL 23A-22-15.1.

■ [¶ 10] Viewed in a light most favorable to the verdict the evidence confirmed that Hart: (1) pushed, choked and slapped the victim; (2) unbuttoned and pulled her pants down; and (3) placed his hands on or near her genitals. All these acts were accomplished without the victim's consent.

---

1.  SDCL 22-22-1 states:

    Rape is an act of sexual penetration accomplished with any person under any of the following circumstances:

    (2) Through the use of force, coercion or threats of immediate and great bodily harm against the victim or other persons within the victim's presence, accompanied by apparent power of execution;

Considering the entire record, the evidence was sufficient to sustain the verdict.

## [¶ 11] II. Failure to Instruct on Specific Intent

[¶ 12] Hart contends the court failed to instruct the jury on specific intent as an element of attempted second degree rape.[2] He cites *State v. Lyerla*, 424 N.W.2d 908 (S.D.1988), *cert denied*, 488 U.S. 999, 109 S.Ct. 774, 102 L.Ed.2d 767 (1989), for the rule that specific intent is required for all attempt crimes. While we acknowledge attempt crimes include specific intent as an element, an explicit instruction is not always necessary.

[¶ 13] Instructions are adequate, when considered as a whole, if they correctly state the law and properly inform the jury. *State v. Schmiedt*, 525 N.W.2d 253, 255 (S.D. 1994). Where the language of an instruction is substantially the same as SDCL 22–4–1,[3] a defendant cannot complain that it failed to adequately explain the law. *State v. Olson*, 408 N.W.2d 748, 753–54 (S.D.1987). In defining intent in attempted second degree rape cases, we stated:

[T]o consummate an attempt to commit a crime there must be something more than mere intention or preparation. The attempt must be manifested by acts which would end in accomplishment, but for intervening circumstances occurring apart from, and independent of, the will of the defendant.... In other words, to constitute an attempt the acts of the defendant must go so far that they would result in the accomplishment of the crime unless frustrated by extraneous circumstances.

*State v. Martinez*, 88 S.D. 369, 372, 220 N.W.2d 530, 531 (1974)(quoting *State v. Judge*, 81 S.D. 128, 132–33, 131 N.W.2d 573, 575–76 (1964)). *Martinez* also noted:

[T]he statute [SDCL 22–22–1] requires only "*any*" act toward the commission of such crime ... meaning any *unequivocal* act to insure that the intended result was a *crime* and not any other innocent act. The line between preparation and attempt is drawn at that point where the accused's acts no longer strike the jury as being equivocal but unequivocally demonstrate that a crime is about to be committed."

*Id.* 220 N.W.2d at 531. SDCL 22–22–1(2), combined with SDCL 22–4–1, applies when (1) a defendant attempts to accomplish sexual penetration with a person; (2) the circumstances under which the act is attempted evidences the use of force, coercion or threats of immediate and great bodily harm against the victim or other persons within the victim's presence, accompanied by apparent power of execution; and (3) the act fails, or is prevented or intercepted in its perpetration. Here the trial court not only defined attempt under the statute, but it also used the term "attempt" in both the first and second elements in its instruction on the offense for which Hart was convicted. Instructions nine and ten clearly inform the jury that to render Hart guilty, he must have had the intent to accomplish forced or coercive sexual penetration.[4] Though it may

---

2. Hart proposed the following instruction based upon South Dakota criminal pattern jury instruction 1–12–2 as follows:

   In the crime of Attempted Second Degree Rape there must exist in the mind of the perpetrator the specific intent to accomplish an act of sexual penetration with any person through the use of force, coercion or threats of immediate and great bodily harm against the victim or other persons within the victim's presence, accompanied by apparent power of execution. If specific intent did not exist, this crime has not been committed.

3. SDCL 22–4–1 defines attempt as follows:

   Any person who attempts to commit a crime and in the attempt does any act toward the commission of the crime, but fails or is pre-

vented or intercepted in the perpetration thereof....

4. The jury was instructed:
   INSTRUCTION NO. 9
   It is provided by a statute of this state that any person who attempts to accomplish an act of sexual penetration with any person through the use of force, coercion or threats of immediate and great bodily harm against the victim, accompanied by apparent power of execution but fails or is prevented or intercepted in the perpetration thereof is guilty of Attempted Second Degree Rape.
   INSTRUCTION NO. 10
   The elements of the offense of attempted rape in the second degree as charged in Count II[of] the Information each of which the state must prove beyond a reasonable doubt, are:

have been preferable to have given Hart's proposed pattern instruction, we conclude the court's instructions as a whole adequately informed the jury on the law.

### [¶ 14] III.   Gang Affiliation Testimony

■ [¶ 15] We will not disturb a trial court's evidentiary rulings unless it abused its discretion. *State v. Hanson*, 456 N.W.2d 135, 138 (S.D.1990); *State v. Olesen*, 443 N.W.2d 8, 9 (S.D.1989); *State v. Bawdon*, 386 N.W.2d 484, 486 (S.D.1986). Hart asserts the court erred in admitting testimony about his alleged affiliation with a local gang. Shortly after the attempted rape occurred, the victim told Officer Peterson that she was related to certain members of a local gang called TBZ (the Boyz), and stated she would let them handle the matter. She also said Hart "is supposed to be a member or an associate of the Browns," purportedly a rival gang.

■ [¶ 16] The State moved to exclude the victim's gang reference. Hart resisted, arguing "We should have the right to bring up her relation or her family being in the TBZ." Alternatively, the State asserted, if the court allows reference to the TBZ, then Hart's alleged membership with the Browns should also be admitted. The trial court allowed all the victim's gang comments, ruling it was part of the *res gestae*. *See* SDCL 19–16–5(Rule 803(1)); *State v. Orelup*, 492 N.W.2d 101, 106 (S.D.1992). We need not consider whether these statements fall under any hearsay exception because they were irrelevant and hence, inadmissible. *See* SDCL 19–12–2(Rule 402).

■ [¶ 17] All gang affiliations should have been excluded, but to require reversal the error must be prejudicial. The burden is on Hart to show prejudicial error, so that under the evidence the jury probably would have returned a different verdict if the alleged error had not occurred. *State v. Wimberly*, 467 N.W.2d 499, 504 (S.D.1991); *State v.*

*Davis*, 401 N.W.2d 721, 725 (S.D.1987). Based on all the evidence and considering that the victim's gang testimony was a brief divergence from an otherwise straightforward rendition of events, we are satisfied the jury verdict would not have been different if the gang references were excluded and therefore it constitutes harmless error.

[¶ 18] Affirmed.

[¶ 19] MILLER, C.J., and SABERS, AMUNDSON, and GILBERTSON, JJ., concur.

1. That the defendant at the time and place alleged in the Information, attempted to accomplish an act of sexual penetration with [victim's name]; and
2. That the defendant attempted to accomplish such act of sexual penetration through the use of force, coercion or threats of imme-

diate and great bodily harm against [victim's name], accompanied by apparent power of execution.
3. That the defendant failed, was prevented from or intercepted in the perpetration of such act.