1999 SD 76

**STATE of South Dakota, Plaintiff
and Appellee,**

v.

**Timmothy Allen BINGHAM, Defendant
and Appellant.**

Nos. 20663, 20664.

Supreme Court of South Dakota.

Considered on Briefs April 26, 1999.

Decided June 23, 1999.

Mark Barnett, Attorney General, Ann C. Meyer, Assistant Attorney General, Pierre, South Dakota, for plaintiff and appellee.

Laurel Olson Eggers, Sioux Falls, South Dakota, for defendant and appellant.

AMUNDSON, Justice

[¶ 1.] Timmothy Bingham appeals from two judgments of conviction for passing insufficient funds checks. He raises a single issue on appeal regarding the trial court's exclusion of evidence of his signature. Because evidence of Bingham's signature was introduced at trial and because he has failed to show prejudicial error, we affirm.

FACTS

[¶ 2.] Bingham was charged by information with passing an insufficient funds (INSF) check in the amount of $1050.50 payable to Donovan's Hobby Shop and by indictment with passing an INSF check in the amount of $953.98 payable to Furniture Discounters. Both checks were passed on August 16, 1997 and, being over $500 each, constituted Class 6 felonies under SDCL 22-41-1. A single trial on both counts was held on June 22 and 23, 1998.

[¶ 3.] Bingham sought to introduce exhibits at trial he alleges would have provided the jury with contemporaneous samples of his signature and would have supported his defense that he did not commit the charged crimes.[1] The trial court refused to admit the exhibits, citing SDCL 19–12–3. Ultimately, Bingham was found guilty by a jury of both counts of passing the INSF checks. He raises a single issue on appeal: Whether the trial court erred in refusing to admit the proffered exhibits which allegedly displayed his signature made at a time contemporaneous to the date on which the INSF checks were passed.

## ANALYSIS AND DECISION

[¶ 4.] The four excluded exhibits that are the subject of this appeal were each refused under SDCL 19–12–3. This statute provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence.

At the close of evidence, the trial court indicated it was also relying on *State v. Larson*, 512 N.W.2d 732 (S.D.1994), regarding third party perpetrator evidence, in excluding the exhibits. The trial court's ruling in this regard is presumed correct and will not be disturbed on appeal absent an abuse of discretion. *State v. White*, 1996 SD 67, ¶ 19, 549 N.W.2d 676, 681.

[¶ 5.] Bingham did not directly raise the issue of third party perpetrator. His defense was that he did not commit the charged crimes and that the signatures on the two INSF checks were not his own. He so testified at trial. At least one of his defense witnesses, the assistant director of a blood donation center, testified to familiarity with Bingham and his signature. Thus, the proper foundation appears to have been laid for admission of this evidence of his signature under SDCL 19–17–1(2). *See State v. Loftus*, 1997 SD 131, ¶ 32, 573 N.W.2d 167, 175 (Konenkamp, J., concurring) ("[O]nly when a lay witness establishes a familiarity with another's handwriting and describes the relationship or circumstance from which that knowledge might have been acquired may the testimony be admitted.") (citations omitted). Bingham did not intend to call an expert witness to compare signatures, although a handwriting expert had been available to him in preparation for trial.[2]

[¶ 6.] In reviewing evidentiary rulings of a trial court, this Court is not free to substitute its own judgment for that of the trial court. "Our test on review is not whether we would make a similar ruling, but rather whether a judicial mind, in view of the law and the circumstances, could have reasonably reached the same conclusion." *State v. Chamley*, 1997 SD 107, ¶ 7, 568 N.W.2d 607, 611 (citing *State v. Barber*, 1996 SD 96, ¶ 14, 552 N.W.2d 817, 820). Under this record, it cannot be said that no judicial mind could have reasonably reached the same conclusion that the trial court reached here.

[¶ 7.] The jury was provided with at least one trial exhibit bearing Bingham's authenticated signature on the photo identification card he carried in lieu of a driv-

---

1. Bingham sought to introduce the following items he claims contained his signature: 1) blood plasma donor forms from 1995 through September 1997; 2) March 1998 Minnehaha County jail notice of rule infraction; 3) Ramada Inn hiring documents dated August 20, 1997; and 4) McKennan Hospital emergency room records from February 1998. A fifth exhibit, a collection of 28 INSF checks purportedly signed by Bingham, was also re-fused; Bingham does not appeal this refusal by the trial court. None of these exhibits are included in the appellate record.

2. The trial court granted defendant's pretrial motion for a handwriting expert and granted defendant's motion for delay which was based on late receipt of this expert's report. This report was not introduced as a trial exhibit.

er's license for identification purposes.[3] This photo identification card was issued to Bingham by the State of South Dakota on August 19, 1997, three days after the INSF checks at issue were written. Bingham testified that the signature on this card was his own. Therefore, the jury was provided with the type of evidence Bingham sought to introduce and which he claims the trial court erred by excluding, *i.e.*, a copy of his signature made contemporaneously to the occurrence of the charged crimes. Thus, the court's ruling did not preclude him from presenting his defense to the jury and there was reliable signature evidence before the jury to corroborate his testimony that he did not write the checks.[4]

■ [¶ 8.] SDCL 19–12–3 permits exclusion of relevant evidence if its probative value is outweighed by the "needless presentation of cumulative evidence" or would, in the trial court's determination, mislead or confuse the jury. In rejecting the 28 INSF checks as an exhibit, which ruling is not appealed, the court specifically noted outside of the jury's presence that admission of this exhibit would likely confuse the issues and mislead the jury. In subsequently rejecting the other four exhibits, which ruling is appealed, the trial court, without additional discussion, cited "relevancy" and "same grounds." Having

two signature exhibits entered into evidence, although one was disputed by Bingham, the trial court may have decided that four additional signature exhibits would constitute cumulative evidence to the point of outweighing its probative value. Or the trial court may have determined that the records of the blood donation center, which documented Bingham's twice weekly donations over a period of two years, or Bingham's six-page application records for employment at the Ramada Inn, would be confusing and misleading to the jury.[5] It is within the trial court's discretion to make such a ruling under SDCL 19–12–3.

■ [¶ 9.] Even assuming *arguendo* that the trial court did abuse its discretion in excluding his proffered exhibits, Bingham has the burden of showing the court's ruling was prejudicial error before his convictions will be reversed. *State v. Hart,* 1996 SD 17, ¶ 17, 544 N.W.2d 206, 210. He must show that under the evidence, the jury probably would have returned a different verdict had the alleged error not occurred. *Id.* This he has not been able to do.

[¶ 10.] Two eyewitnesses to the crimes, the store clerks from Donovan's and Furniture Discounters who accepted the INSF checks and photo identification on August 16, 1997, testified against Bingham. Their photographic line-up identifications of him

---

3. Another admitted exhibit, a bank signature card, also purported to show Bingham's signature. It was for the jury to decide whether to believe Bingham's testimony that he did not open the account, and therefore did not sign this card, against which the INSF checks were written. The bank employee who opened this account testified that the person who opened the account provided photographic identification and that the signature on this identification matched his signature as he signed the bank's signature card.

4. No argument was presented that Bingham's signature on his State-issued photo identification card that was in evidence was so markedly different from his signature on the proffered exhibits that would have necessitated having additional samples of his signature before the jury.

5. The particulars regarding these exhibits were gleaned from the trial transcript. As noted in footnote 1, *supra*, none of the rejected exhibits were made part of the record before us on appeal, making it all the more difficult to find an abuse of discretion by the trial court for not admitting them at trial. As the party claiming error, Bingham has the responsibility to insure that a record is made. *State v. Jones,* 416 N.W.2d 875, 878 (S.D. 1987) (citations omitted). "[T]he settled record is the sole evidence of the circuit court's proceedings and, when confronted with an incomplete record, our presumption is that the circuit court acted properly." *Id. See also State v. Sprik,* 520 N.W.2d 595, 600 (S.D. 1994) (defendant failed to make an offer of proof which would have provided a record for appellate review).

from separate photo arrays, within three months of the crimes, as the perpetrator were admitted into evidence. Although one of these eyewitnesses misidentified him in the courtroom one year later, their testimony and their positive identifications of him contemporaneous to the crimes provided sufficient evidence to convince the jury beyond a reasonable doubt that Bingham was guilty as charged.

[¶ 11.] The record shows that unquestionably reliable signature evidence was before the jury and Bingham was not restrained in any way from presenting his defense and using this evidence to support it. He testified, denying the charges and explaining that his billfold and identification papers were unavailable to him during the commission of these crimes. He just was not able to convince the jury. He has not shown on appeal that more of the same evidence would have helped or that the trial court abused its discretion in excluding it.

[¶ 12.] We affirm.

[¶ 13.] MILLER, Chief Justice, and KONENKAMP, and GILBERTSON, Justices, concur.

[¶ 14.] SABERS, Justice, dissents.

SABERS, Justice (dissenting).

[¶ 15.] I dissent. The trial court clearly abused its discretion in rejecting exhibits which would have provided the jury samples of defendant's signature.

[¶ 16.] It should not be a condition of admissibility in this State that evidence is admissible only if offered by the State. How in the world could additional samples of defendant's signature be *so* confusing and misleading to the jury to deny them the right to see it. The jury is literate and was not born yesterday.

[¶ 17.] Can you imagine for a minute this type of evidence being rejected by the trial court if it had been offered by the State to convict? I would reverse and remand on the basis that the denial of this evidence

unduly tied defendant's hands, prejudiced him thereby, and prevented a fair trial. Whatever happened to the concept of a level playing field?